1
2

The Honorable Theresa L Fricke
U.S. District Judge

3
4
5
6

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON

7

8    DANA MCARTHUR, as Personal
     Representative of the ESTATES of
9    ANDREA MCARTHUR and RACHEL
     MCARTHUR, and as ANDREA
10   MCARTHUR and RACHEL
     MCARTHUR's Wrongful Death
11   Beneficiary; COLLIN KOMPLIN,
     as Personal Representative of the ESTATE
12   of JACQUELYN KOMPLIN, and ERIN
     KOMPLIN and COLLIN KOMPLIN as
13   JACQUELYN KOMPLIN's Wrongful Death
     Beneficiaries; GERALD L. FULLER,
14   as Personal Representative of the Estate of
     JANET G. KROLL, and GERALD L. FULLER
15   and WENDY CAVALLI, as Janet G. Kroll's
     Wrongful Death Beneficiaries,
16

17
             Plaintiffs,
18
     vs.
19
     HOLLAND AMERICA LINE, INC.;
20   HOLLAND AMERICA LINE N.V., LLC,
     doing business as HOLLAND AMERICA
21   LINE N.V.; HAL ANTILLEN N.V.;
     SOUTHEAST AVIATION, LLC; and ROLF
22   W. LANZENDORFER, II, deceased, by and
     through the Personal Representative of the
23   ESTATE of ROLF LANZENDORFER,

24
             Defendants.
25

AT LAW AND IN ADMIRATY

Case No.: NO.  2:22-cv-01071-TLF

FIRST AMENDED COMPLAINT FOR
DAMAGES

[Negligence; Maritime Claims]

JURY DEMAND

26   FIRST AMENDED COMPLAINT
     FOR DAMAGES AND DEMAND
     FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 1

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

COME NOW Plaintiffs, by and through their undersigned counsel, and hereby bring this **Complaint for Damages and Demand for Jury Trial** against Defendant Holland America Line, Inc., Defendant Holland America Line N.V., LLC, Defendant HAL Antillen N.V (hereinafter collectively known as the "Holland Defendants"), Defendant Southeast Aviation, LLC ("Defendant Southeast"), and Defendant Rolf Lanzendorfer, by and through the Personal Representative of the Estate of Rolf W. Lanzendorfer, II. respectfully showing the Court as follows:

## INTRODUCTION

1.      This is a civil tort action seeking recovery for the personal injuries and wrongful deaths of Andrea McArthur, Rachel Kaye McArthur, Jacquelyn Komplin and Janet G. Kroll arising from the tragic aviation crash that occurred on August 5, 2021 during the Experience Misty Fjords by Floatplane tour, a shore excursion operated by Defendant Southeast ("the subject floatplane excursion" or "the subject crash").  The fatal crash occurred twelve miles northeast of Ketchikan, Alaska, near the popular tourist destination, Misty Fjords National Monument, which the Holland Defendants encourage cruise passengers to visit via seaplane.

2.      The Holland Defendants, as owners and operators of cruise ships, heavily influence the tour schedules of shore excursion operators, including seaplane and floatplane operators like Defendant Southeast.  The Holland Defendants advertise and market shore excursions in order to promote the overall cruise experience.  The cruise lines and excursion operators jointly benefit from high participation among cruise passengers.  As a result, the excursion operators face scheduling pressures to complete all scheduled tours in the short duration that cruise ships remain

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 2

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

docked at ports of call, regardless of weather or limiting conditions.  Of course, the cruise lines, like Holland America, create and dictate the schedules relied upon by the excursions' operators.

3.      The scheduling pressures created by the cruise lines are particularly dangerous in the context of seaplane or floatplane excursions in Alaska.  According to the National Transportation Safety Board ("NTSB"), Part 135 operations, which include seaplane and floatplane excursions, were involved in 207 accidents resulting in 80 fatalities between January 2008 and June 2019 in Alaska.  The NTSB noted Alaska's unique mountainous terrain, challenging weather patterns, and heavy aviation traffic.  Indeed, the Misty Fjords National Monument in Alaska, where the subject crash occurred, is named for the misty weather conditions of the area.

4.      On June 15, 2015, a de Havilland DHC-3 floatplane, carrying eight passengers from the Holland America Line cruise ship *Westerdam*, crashed into mountainous, tree-covered terrain about 24 miles east-northeast of Ketchikan, Alaska, near the site of the subject crash.  In its final report, the NTSB attributed the crash to scheduling pressures that force some seaplane operators to fly in marginal weather conditions.  The NTSB concluded that the cruise industry "may not be aware that the cruise line's schedule may contribute to the schedule pressures air tour operators face associated with returning shore excursion passengers to their ship in time."  In order to make the cruise industry aware that their schedules were contributing to the dangerous culture of some Alaska seaplane operators, the NTSB submitted a letter to the Cruise Lines International Association, of which the Holland Defendants are a member, encouraging the  cruise lines, like the Holland Defendants, that sell air tours as shore excursions that they should review the circumstances of the fatal 2015 floatplane accident in the Misty Fjords National Monument/Ketchikan area to consider ways to mitigate associated risks.

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 3

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

5. Since the time of this letter, if not before, the Holland Defendants, have had actual notice of the dangers associated with Alaska seaplane excursions and the cruise industry's contribution to those dangers. The Holland Defendants recognition of the dangers associated with these floatplane excursions and corresponding NTSB recommendation is evident from the fact that Holland requires Alaskan seaplane/floatplane tour companies to include Holland entities as additional insureds on their policies. Despite this notice, the Holland Defendants continued to advertise, promote, and market sightseeing floatplane excursions of the Misty Fjords National Monument in promotional materials and on its website as the "Number One" thing to do in Ketchikan, Alaska.  This conduct encouraged and enticed their cruise passengers, like Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, to participate in unreasonably dangerous sightseeing floatplane excursions under uncertain and unsafe hazardous weather conditions.

6. Unlike the Holland Defendants, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll had no knowledge of the crash history and specific risks associated with floatplane excursions in the Ketchikan area.  Under maritime law, the Holland Defendants had a duty to warn their passengers of these risks.  Instead of warning their passengers, the Holland Defendants merely required floatplane excursion companies, like Defendant Southeast, to include Holland as an additional insured.  Thus, the Holland Defendants' response to the 2017 NTSB Final Report and corresponding NTSB Safety Recommendation was to protect *itself* from liability rather than protect its cruise passengers — by mitigating associated risks or warning its passengers of the risks involved with floatplane excursions.

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 4

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

7.     On August 5, 2021, due to the joint negligence of the Holland Defendants, Defendant Shore Excursions, Defendant Southeast, and pilot, Rolf Lanzendorfer, including Holland's negligence for the failure to warn its passengers of the risks associated with sightseeing floatplane excursions of Misty Fjords National Monument, five cruise passengers, including Andrea and Rachel McArthur, Janet Kroll, and Jacquelyn Komplin participated in the subject floatplane excursion and were fatally injured.

## PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

8.     Plaintiff Dana McArthur ("Plaintiff McArthur" or "Mr. McArthur") is a resident of the State of Georgia and over the age of eighteen years.  Mr. McArthur is the surviving spouse of Andrea McArthur and surviving parent of Rachel Kaye McArthur, who was an adult, never married, and without children.  Plaintiff McArthur is the proper party to bring this personal injury action on Andrea McArthur's and Rachel McArthur's behalf.  In addition to asserting wrongful death claims on behalf of Andrea McArthur as her surviving spouse and Rachel Kaye McArthur as her surviving parent, in his capacity as the proper beneficiary, Mr. McArthur also asserts claims as Personal Representative on behalf of the Estate of Andrea McArthur and the Estate of Rachel Kaye McArthur.  By filing this action, Plaintiff McArthur avails himself of the jurisdiction and venue of this Court.

9.     Plaintiff Erin Komplin is a resident of Sabah, Malaysia and over the age of eighteen years.  Plaintiff Collin Komplin is a resident of the State of California and over the age of eighteen years.  Mr. Komplin and Ms. Komplin are the surviving adult children of Jacquelyn Komplin, who was an adult, and without living spouse.  Ms. Komplin and Mr. Komplin are the proper parties to bring this personal injury action on Jacquelyn Komplin's behalf.  In addition to asserting wrongful

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 5

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

death claims on behalf of Jacquelyn Komplin as her surviving children, Mr. Komplin also asserts claims as the Personal Representative on behalf of the Estate of Jacquelyn Komplin. By filing this action, Ms. Komplin and Mr. Komplin avail themselves of the jurisdiction and venue of this Court.

10.     Plaintiff Gerald L. Fuller ("Plaintiff Fuller" or "Mr. Fuller") is a resident of the State of Illinois and over the age of eighteen years. Plaintiff Wendy Cavalli is a resident of the state of Nevada and over the age of eighteen years. Mr. Fuller and Ms. Cavalli are the surviving adult children of Janet Kroll, who was an adult, and without living spouse. Mr. Fuller and Ms. Cavalli are the proper parties to bring this personal injury action on Janet Kroll's behalf. In addition to asserting wrongful death claims on behalf of Janet Kroll as her surviving children, Mr. Fuller also claims as the personal representative on behalf of the estate of Janet Kroll. By filing this action, Mr. Fuller and Ms. Cavalli avail themselves of the jurisdiction and venue of this Court.

11.     Defendant Holland America Line, Inc. ("Defendant Holland Inc.") is a corporation organized under the laws of the State of Washington with its principal place of business at 450 Third Avenue West, Seattle, King County, Washington. Upon information and belief, and without the benefit of discovery, at all times pertinent to this Complaint, Defendant Holland Inc. was and is in the business of operating and/or chartering cruise passages to Alaska, including the subject cruise on the MS Nieuw Amsterdam. Defendant Holland Inc. also maintains a registered agent in this State, C T Corporation System 711 Capitol Way S Suite 204, Olympia, Thurston County, Washington.

12.     *Personal Jurisdiction over Holland America Line, Inc.* Personal jurisdiction over Defendant Holland America Line, Inc. is proper under this Court's general jurisdiction because Defendant Holland America Line, Inc. is incorporated, maintains its principal place of business,

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 6

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

and conducts substantial business in King County, in the State of Washington. Further, Defendant

Holland America Line, Inc. contractually agreed to venue and therefore jurisdiction in this matter

in the District Court of Washington.

13.     Defendant Holland America Line N.V., LLC, ("Defendant N.V.") doing business

as Holland America Line N.V., LLC, is a corporation organized under the laws of the Netherlands

and is registered to do business in the City of Seattle, King County, State of Washington with its

principal place of business at 450 Third Avenue West, Seattle, Washington. Defendant N.V. is an

affiliated subsidiary and agent of Defendant Holland that conducts substantial business in the State

of Washington. Upon information and belief, at all relevant times, Defendant Holland America

Line N.V. was and is in the business of organizing, promoting, operating, providing and/or

chartering vacation cruise passages in Alaska, including the Alaskan Explorer 7-day cruise on the

MS *Nieuw Amsterdam*. Defendant N.V. also maintains a registered agent in this State, C T

Corporation System, 711 Capitol Way S Suite 204, Olympia, Thurston County, Washington.

14.     *Personal Jurisdiction over Holland America Line, N.V., LLC.* Personal jurisdiction

over Defendant Holland America Line N.V. is proper under this Court's general jurisdiction

because Defendant conducts substantial business and maintains its principal place of business in

King County, in the State of Washington. Further, Defendant Holland America Line N.V.

contractually agreed to venue and therefore jurisdiction in this matter in the District Court of

Washington.

15.     Defendant HAL Antillen N.V. is a Curacao corporation doing business in

conjunction with and in concert with Holland America Line, Inc. and Holland America Line N.V.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

in the State of Washington. At all relevant times, Defendant HAL Antillen N.V. was the operator and/or owner the MS *Nieuw Amsterdam*.

16.     *Personal Jurisdiction over HAL Antillen N.V.*  Personal jurisdiction over Defendant HAL Antillen N.V. is proper under the Washington long arm statute RCW 4.28.185, and under a joint theory of liability.  Both directly and through Defendants Holland America Line, Inc. and Holland America Line N.V., Defendant HAL Antillen N.V. carried on substantial and continuous business activities within the State of Washington and with Washington's citizens.  Defendant HAL Antillen N.V. benefitted from the joint venture and partnership activities that it conducted in the State of Washington.  These activities resulted in increased profits for their joint undertaking. Further, as a co-joint venturer with Defendants Holland America Line, Inc., Holland America Line N.V., and third-party vendors, Defendant HAL Antillen N.V. agreed to venue and therefore jurisdiction in this matter in the Western District Court of Washington.

17.     Defendant Holland America Line - USA, Inc. ("Defendant Holland") is a corporation doing substantial business in the State of Washington.  Defendant Holland America is organized and incorporated under the laws of the State of Delaware with its principal place of business at 450 Third Avenue West, Seattle, King County, Washington.  At all times relevant hereto Defendant Holland America Line – USA was doing business in conjunction and in concert with, one or more of the other Defendants described herein and conducted, approved, supported or otherwise participated in the wrongful and negligent actions of these Defendants as set forth herein, including the sale, promotion, marketing, and arranging of cruises and shore excursions for passengers, including airplane sightseeing tours and air charters, substantially similar to the subject sightseeing floatplane excursion at issue in this case.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

18.  *Personal Jurisdiction over Holland America Line – USA, Inc.*  Personal jurisdiction over Defendant Holland is proper under this Court's general jurisdiction because Defendant conducts substantial business and maintains its principal place of business in King County, in the State of Washington.  It also maintains a registered agent to transact business in the State of Washington, located at C T Corporation System, 711 Capitol Way S Suite 204, Olympia, Thurston County, Washington.  Further, Defendant Holland contractually agreed to venue and therefore jurisdiction in this matter in the Western District Court of Washington.

19.  Defendants Holland America Line, Inc., Holland America Line N.V., LLC, and HAL Antillen N.V., are collectively referred to as the "Holland Defendants."  At all relevant times, the Holland Defendants operated the MS Nieuw Amsterdam, advertised, promoted, and marketed various shore excursions for its passengers, including floatplane excursions over the Misty Fjords National Monument area.

20.  Defendant Southeast Aviation, LLC ("Defendant Southeast") is a foreign corporation doing substantial business in the State of Washington.  Defendant Southeast is organized and incorporated under the laws of the State of Alaska with its principal place of business at 1249 Tongass Avenue, Suite A, Ketchikan, Alaska 99901.  Defendant Southeast is an Alaskan company that worked along with, and in concert with, as an agent of, and/or as a joint venturer with the Holland Defendants to advertise, market, promote, sell, provide and profit from seaplane/floatplane excursion tours for cruise passengers of Holland's Cruise line, including cruise passengers from the State of Washington.  Moreover, Defendant Southeast employed the pilot of the subject floatplane excursion, Rolf Lanzendorfer, who is a resident of the State of Washington. Defendant Southeast directly participated in the wrongful and negligent actions, including the sale,

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

promotion, marketing, arranging shore excursions, as well as employing the negligent pilot. Defendant Southeast may be served by delivering Summons and the Complaint upon its registered agent, Abby Kosmos, at 1249 Tongass Ave, Ste-A, Ketchikan, AK 99901.

21.     *Personal Jurisdiction over Southeast Aviation, LLC.*     Personal jurisdiction over Defendant Southeast is proper under the Washington long arm statute RCW 4.28.185, and under a joint theory of liability.  Defendant Southeast contracted to insure the Holland Defendants, which are entities located in the State of Washington. This Court has specific jurisdiction over Defendant Southeast because Plaintiffs' claims arise out of conduct by Defendant Southeast, either individually or through its employee/agent, Rolf Lanzendorfer, or through and in concert with one or more of the Holland Defendants within the State of Washington.  Both directly and through Defendants Holland America Line, Inc., Holland America Line N.V., Defendant HAL Antillen N.V., and third-party travel agents, Defendant Southeast carried on substantial business activities within the State of Washington and with Washington's citizens. Defendant Southeast systematically serves a market in the State of Washington directed at Holland's cruise passengers, including Plaintiffs' decedents that were passengers aboard a Holland America cruise that departed from and returned to its home port located in Seattle, Washington.  As such, Defendant Southeast has such minimum contacts within the forum because Plaintiffs' claims sufficiently relate to the Defendant Southeast's in-forum activities.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021).  Additionally, Defendant Southeast benefitted from the joint venture and partnership activities with the Holland Defendants and Southeast Aviation that it conducted in the State of Washington.  These activities resulted in increased profits for their joint undertaking. Moreover, the pilot, Rolf Lanzendorfer, that flew the subject floatplane excursion on behalf of and

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 10

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

at the direction of Defendant Southeast, was a resident of Cle Elum, Washington.  Further, as a co-joint venturer with Defendants Holland America Line, Inc., Holland America Line N.V. and HAL Antillen N.V., Defendant Southeast agreed to venue and therefore jurisdiction in this matter in the Federal District Court of Washington.

22.     Defendant Rolf W. Lanzendorfer, II, deceased, was an individual over the age of 18 years and resident of the State of Washington. Mr. Lanzendorfer was the pilot employed by Defendant Southeast to provide pilot services for the subject floatplane excursion.  Defendant Lanzendorfer worked along with, and in concert with, as an agent and/or employee of Defendant Southeast to provide and profit from seaplane/floatplane excursion tours for cruise passengers of Holland's Cruise line.  Defendant Lanzendorfer's negligent actions in continuing to fly the subject floatplane in deteriorating conditions directly caused the deaths of Plaintiffs' decedents.

23.     The causes of action asserted in this Complaint arise under the general maritime law of the United States because the Holland Defendants engaged in conduct that bears a significant relationship to traditional maritime activity.  Moreover, the Holland America Line Cruise Contract (the "Cruise Contract") between the Holland Defendants and its cruise passengers, including Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, included a provision that confirms that all claims and disputes between any Guest and the Holland Defendants shall be governed by maritime law and further provided that if maritime law is not applicable, the laws of the State of Washington shall govern the contract.

24.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 11

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

parties. Additionally, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, federal maritime law, because the claims which gives rise to this case involved a cruise ship shore excursion by floatplane which began by or in the navigable waters.

25.     Venue is proper in the Western District of Washington to the Holland Defendants because (1) Defendants Holland America Line, Inc. and Holland America N.V., LLC both maintain a principal place of business in Seattle, Washington; (2) the Cruise Contract with Plaintiffs' decedents requires that any action against it be brought in the Federal Court for the Western District of Washington; and (3) this case arises out of conduct occurring in the Western District of Washington.

26.     Venue is proper in the Western District of Washington as to Defendant Southeast because (1) Defendant Southeast is vicariously liable for the negligent actions of its agent and/or employee, Rolf Lanzendorfer, who is a resident of Cle Elum, Washington; (2) Defendant Southeast is a co-venturer, agent, and/or partner with the Holland Defendants and some or all of the Holland Defendants reside in King County, Washington; (3) Defendant Southeast entered into agreements with third-party travel agencies, cruise passengers, and/or the Holland Defendants in King County, Washington; (4) because Defendant Southeast is a co-venturer, agent, and/or partner with the Holland Defendants, it is also subject to the Venue provision of the Holland America Cruise Contract with decedents; (5) because Defendant Southeast contractually agreed to indemnify Holland America, a cruise line based in the Western District of Washington, thereby insuring a "person, property, or risk located within this state;" and (6) this case arises out conduct occurring in the Western District of Washington.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

## FACTUAL STATEMENT

27.     The preceding paragraphs are incorporated as if set forth fully herein.

28.     At all times relevant to this Complaint, the Holland Defendants owned, operated, managed, and controlled the vessel, MS Nieuw Amsterdam.

29.     On or about July 31, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll were paying cruise passengers aboard the MS Nieuw Amsterdam.  The Holland Defendants transported the cruise passengers to various ports of call in Alaska for the 7-day Alaskan Explorer cruise.

30.     The Holland Defendants reasonably expect that cruise passengers will participate in sightseeing shore excursions by floatplanes—whether provided directly by Holland or other operators—while disembarked in Ketchikan, Alaska to view the Misty Fjords National Monument. In fact, the Holland Defendants advertise, promote, market, and sell various Misty Fjords National Monument sightseeing shore excursions for its cruise passengers.

31.     Sightseeing floatplane excursions of the Misty Fjords National Monument are popular shore excursions in the Ketchikan, Alaska locale for cruise passengers.  On the Holland Defendants' website, visiting and viewing the Misty Fjords National Monument — "best explored by boat or seaplane" — is listed as the "Number One" thing to do in Ketchikan, Alaska.

32.     Upon information and belief, at all times relevant to this Complaint, the subject floatplane excursion, owned and/or operated by Defendant Southeast, was offered, arranged for, recommended, and/or marketed for vacation cruise customers, including Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, on Alaskan cruises such as the 7-Day Alaskan Explorer.

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 13

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

### A. Details of the Cruise and Shore Excursion Transactions

33.     The details of the transactions of Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll are as follows:

a.  On July 18, 2021, Andrea and Rachel McArthur, mother and daughter, booked two cruise tickets for a 7-day Alaskan Explorer cruise ("the subject cruise") with the Holland Defendants. The total cost for the two cruise tickets were $3,634.00. On July 21, 2021, in preparation of their cruise, Andrea McArthur purchased two shore excursions directly through the Holland Defendants' website and purchased a third shore excursion from a third-party travel agency.  The two shore excursions purchased from the Holland Defendants were entitled "Evening Whale Quest Featuring Alaska Cuisine" to take place in Juneau and a "Sea Otter Quest & Fortress of the Bear" to take place in Sitka.  Mrs. McArthur paid $719.80 to the Holland America Defendants for the excursions.  The third shore excursion that Andrea McArthur purchased was for a day excursion called "the Misty Fjords Flightseeing" ("the subject floatplane excursion") to take place on August 5, 2021 at 9:30 a.m., in or about Ketchikan, Alaska. Mrs. McArthur incurred a credit card charge of $547.20 for two tickets for the subject floatplane excursion. Mrs. McArthur booked all three shore excursions as part the overall cruise experience for herself and her daughter.

b.  On June 24, 2021, Jacquelyn Komplin booked two cruise tickets for herself and her life partner on the subject cruise with the Holland Defendants. The total costs for both tickets was $5,364.  Subsequently on July 19, 2021, Jacquelyn Komplin's life partner purchased two shore excursions for himself and Jacquelyn Komplin—one shore

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 14

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

excursion was booked directly through Holland and the others were booked through a third-party agent. The shore excursion booked through Holland was for Whale Watching in Juneau. The other shore excursions, which included the subject floatplane excursion, were purchased through third-party travel agents. Jacquelyn Komplin and her lifelong partner booked all of their shore excursions as part of their overall cruise experience.

c. On July 2, 2021, Janet Kroll booked her ticket for the subject cruise with the Holland Defendants. The cruise tickets were purchased through a third-party travel agent. Subsequently, on July 29, 2021, Janet Kroll purchased a ticket for the subject floatplane excursion. Ms. Kroll booked her shore excursion as part of her overall cruise experience.

34.    The subject cruise aboard the MS Nieuw Amsterdam was scheduled to depart on July 31, 2021 from Seattle, Washington, and return to Seattle, Washington on August 8, 2021. The ship traveled to Alaska with scheduled stops at several ports of calls in Alaska, including Puget Sound, Stephens Passage, Juneau, Glacier Bay, Icy Strait, Sitka, and Ketchikan.

*B. The Holland Defendants Marketing, Advertising, and Promoting of a Substantially Similar Shore Excursion*

35.    Upon information and belief, and without the benefit of full discovery after Andrea, Rachel, Jacquelyn and Janet booked their tickets for the subject cruise, the Holland Defendants sent promotional material, which provided information and descriptions of various shore excursions, including excursions entitled, "Misty Fjords & Wilderness Explorer Cruise" and "Misty Fjords National Monument By Seaplane."

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

36.     In addition to the promotional material sent to the Holland Defendants' cruise passengers, Holland's website contained information and descriptions of shore excursions, including the Misty Fjords seaplane excursions.

37.     Upon information and belief, on or before purchasing tickets to the subject floatplane excursion, Andrea McArthur, Jacquelyn Komplin and Janet Kroll browsed Holland's website in search of shore excursions for each port of call, including Ketchikan, for the 7-day Alaskan Explorer cruise.

38.     On Holland's website, the Holland Defendants marketed and promoted a substantially similar shore excursion entitled, "The Misty Fjords National Monument by Seaplane," as part of the cruise's overall experience.  This shore excursion also occurred on a de Havilland Beaver seaplane and also took place in or about Ketchikan, Alaska.  The promotional material on Holland's website provided that "[o]nly by air can you fully appreciate the dramatic beauty of land slowly crafted by nature over tens of thousands of years."

39.     Upon information and belief, after reviewing Holland's information concerning the "Misty Fjords National Monument By Seaplane," Andrea McArthur, Jacquelyn Komplin—or her life partner, and/or Janet Kroll directed travel agents to purchase tickets for the subject floatplane excursion.

40.     The subject floatplane excursion was advertised as a ninety-minute-long excursion. The subject sightseeing floatplane excursion was promoted, advertised, and marketed as a shore excursion for the 7-day Alaskan Explorer Cruise operated and owned by the Holland Defendants. The subject sightseeing floatplane excursion was substantially similar to the description of the Misty Fjords shore excursion offered by the Holland Defendants.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*C. Details of the Subject Crash*

41.     Upon information and belief, on August 5, 2021, the MS Nieuw Amsterdam arrived at the Port of Ketchikan, Alaska at approximately 7:00 a.m. and was scheduled to depart Ketchikan at approximately 4:00 p.m.   The cruise schedule provided a total of eight hours for all cruise passengers to disembark, participate in any shore activities, and reboard the MS Nieuw Amsterdam.

42.     Upon information and belief, on August 5, 2021, shortly after disembarking from the subject cruise ship and as part of planned cruise activities, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll participated in the subject floatplane excursion at/or near Ketchikan.  This subject floatplane excursion was arranged for, recommended, operated, marketed, and/or sold to vacation cruise customers aboard the MS Nieuw Amsterdam.

43.     Upon information and belief, the subject floatplane excursion that Andrea, Rachel, Jacquelyn and Janet booked was the second sightseeing floatplane tours that Defendant Southeast scheduled to provide on August 5, 2021 for Holland cruise passengers before the ship departed at 4:00 p.m.

44.     On August 5, 2021, pilot Rolf Lanzendorfer flew, on behalf of and at the direction of the Holland Defendants and Defendant Southeast, intentionally, carelessly, recklessly and with conscious disregard for the safety of the paying passengers, a float-equipped 1965 de Havilland DC 2 Beaver into unsafe weather conditions, which increased the probability that serious harm and fatalities would result.

45.     On August 5, 2021, as a result of continuing to fly the floatplane into deteriorating and poor weather conditions, pilot Rolf Lanzendorfer crashed the floatplane into steep and rocky

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

terrain.  The crash killed all people aboard, including Plaintiffs' decedents, Andrea McArthur, Rachel McArthur, Jaquelyn Komplin and Janet Kroll.

46.     All fatally injured passengers aboard the floatplane were Holland cruise passengers from the 7-Day Alaskan Explorer cruise that was docked at the Ketchikan port of call.

47.     Upon information and belief, the weather in the Ketchikan locale on August 5, 2021, was approximately 57 degrees, cloudy overcast, and approximately a 2-3 mile visibility.  Further, in the location of the crash, the cloud ceiling was as low as 600 feet.

48.     Upon information and belief, the low cloud overcast, and limited visibility caused the mountaintops to be obscured, thus increasing the likelihood that the subject sightseeing floatplane excursion would end in a fatal aviation crash.

49.     Misty Fjords National Monument takes its name for the near constant precipitation characteristic of the area, which causes mist and low clouds that often clings to sheer cliffs rising from the fjords and obscure the mountaintops.  The most popular ways to visit Misty Fjords National Monument are by air and sea.

50.     The mountainous terrain coupled with hazardous weather conditions, high aviation traffic, and tight sightseeing floatplane tour schedules due to a desire for operators and cruise lines to maximize the number of participating cruise passengers for increased profits, created an unreasonably dangerous excursion.

*D.  The National Transportation Safety Board's Aviation Accident Preliminary Report*

51.     On August 25, 2021, the National Transportation Safety Board released its Aviation Accident Preliminary Report ("Prelim Report") concerning the fatal August 5, 2021 crash.  The Prelim Report indicates that the Subject Crash was yet another example of a fatal accident

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 18

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

involving a floatplane on a controlled flight into terrain in poor visibility conditions during an Alaskan sightseeing shore excursion.

52.     According to the Prelim Report, on the morning of the accident, Rolf Lazendorfer left the Ketchikan Harbor Seaplane Base on his first flight of the day about 7:52 a.m. and returned to the dock at approximately 9:21 a.m.  The pilot refueled in preparation of his next sightseeing floatplane tour that was scheduled to depart at 10:00 a.m.  The pilot departed on his second passenger flight — the subject floatplane excursion.

53.     The subject floatplane traveled through the Misty Fjord Monument and landed on Big Goat Lake at approximately 10:18 a.m. for about ten minutes.  The subject floatplane then departed at 10:27 a.m. for its return flight to the Ketchikan Harbor.  Approximately twenty-three minutes after departing Big Goat Lake, at 10:50 a.m., the plane sent an emergency locator transmitter (ELT) signal.  Unfortunately, the floatplane never returned to its destination, Ketchikan Harbor.

54.     Hours later, rescue crews later discovered the wreckage from the floatplane approximately twelve miles northeast of Ketchikan in the tree-covered steep terrain at approximately 1750 feet elevation.  Due to the unsafe weather conditions coupled with the steep and rocky terrain, flight crews were delayed in their search efforts.

55.     As noted in the NTSB Prelim Report, "[o]ther pilots who were flying passenger flights on the morning of the accident stated that there were low clouds in the valley in which the accident occurred.  Pilots who were assisting with the search and rescue efforts reported that the weather was overcast and the mountain tops were obscured.  In addition, the clouds were as low

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 19

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

as 600-800 feet overcast above ground level in some of the valleys, including the valley of the accident location."

E.  *Defendant Southeast's Notice of Dangers concerning the Subject Pilot's Prior Accident's Performance and Lack of Training*

56.    Rolf Lanzendorfer, the subject pilot, was involved in a floatplane accident less than one month before the Subject crash that claimed the lives of Plaintiffs' decedents.  That floatplane involved was also operated by Defendant Southeast.

57.    According to records, on July 9, 2021, the subject pilot struck a "known green 6'7" 1,500-pound marine buoy" because "he did not taxi out onto the channel to clear his takeoff run because he was in a hurry to get back due to there being more flights on the schedule."[1]

58.    The determination of the FAA's accident investigation was that "the pilot acted carelessly as he was in a hurry, did not conduct a complete preflight to include all available information concerning his flight to include a review of the channel marker buoys, and hit the buy."[2]

59.    After the July 9, 2021 floatplane accident, Defendant Southeast did not require additional training for the subject pilot.  Instead, Defendant Southeast provided that "they wanted the pilot to be the one to tell them if he was ready to come back."[3]

60.    The subject pilot resumed to providing flights for Defendant Southeast twenty-one (21) days after the July 9, 2021 accident despite receiving no additional training.

---

[1] Group Chairman's Factual Report, Operational Factors, National Transportation Safety Board, at 19 (October 27, 2021).
[2] *Id.* at 20.
[3] *Id.* at 21.

FIRST AMENDED COMPLAINT                              *The Law Offices of James S. Rogers*
FOR DAMAGES AND DEMAND                               1500 4th Avenue
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 20         Suite 500
                                                    Seattle, WA 98101
                                                    (206) 621-8525

61.     On August 5, 2021, just six days after resuming his job duties after the July 9, 2021 accident, the Subject Pilot negligently caused another floatplane accident, which took the lives of Plaintiffs' decedents.

F.     *Holland's Notice of the Dangers Concerning Unsafe Weather Conditions for Sightseeing Floatplane Excursions in the Ketchikan/Misty Fjords Area - Prior Aviation Accidents*

62.     The preceding paragraphs are incorporated as if set forth fully herein.

63.     Before the subject crash, the Holland Defendants knew or should have been on notice that the subject floatplane excursion under certain poor weather conditions was not reasonably safe for its passengers.

64.     The Holland Defendants have actual and constructive knowledge of the grave safety concerns regarding sightseeing floatplane excursions in the Ketchikan area, which is an area known for its tree-covered mountainous terrain, thick fog, near constant precipitation, mist and clouds, all of which can obstruct the pilot's visibility.

65.     The Holland Defendants' actual and constructive notice of the grave safety concerns of sightseeing floatplane shore excursions in the Ketchikan locale was acquired by Holland's knowledge of multiple prior floatplane crashes that occurred in the area, Holland's knowledge of drastically deteriorating weather conditions in the area, and Holland's knowledge of the high aviation traffic in the area.

66.     Specifically, the Holland Defendants knew or should have known that on July 24, 2007 and August 16, 2007, sightseeing floatplanes being operated to cruise passengers docked in Ketchikan, Alaska, crashed resulting in fatalities of cruise passengers due to the operation of floatplanes in deteriorating weather conditions.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

67.     The Holland Defendants knew or should have known that in 2013, another sightseeing floatplane excursion ended in fatalities of cruise passengers due to the operation of the floatplane in deteriorating weather conditions.

68.     Additionally, the Holland Defendants knew that in 2015, a floatplane carrying eight passengers from a Holland cruise collided with mountainous terrain resulting in the fatalities of all onboard due to the pilot flying in hazardous weather conditions.  Holland America Group, an affiliate of the Holland Defendants, was a party to the NTSB investigation concerning this floatplane crash. The NTSB investigation and corresponding NTSB Accident Report ("NTSB/AAR-17/02") resulted in the following safety concern, among others: "Need for cruise industry awareness of schedule pressures associated with air tours sold as shore excursions.  The cruise industry may not be aware that air tour operators that fly tours as cruise line shore excursions may face schedule pressures to return passengers to the ship on time."  On May 9, 2017, the NTBS issued the following recommendation to Cruise Lines International Association, of which Holland is a member: "Encourage your members that sell air tours as shore excursions to review the circumstances of this accident and to consider ways to mitigate associated risks. (A-17-44)."  After this letter was issued, Holland had actual notice that its conduct was contributing to the dangerous Alaska seaplane culture.

69.     The Holland Defendants knew or should have known that in 2019 two seaplanes that were both carrying cruise passengers collided in Ketchikan resulting in the fatalities of some of the passengers onboard.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

70. Lastly, the Holland Defendants knew or should have known that on July 9, 2021, one month before the subject sightseeing floatplane fatal collision, the same pilot, Rolf Lanzendorfer, flying at the direction of Southeast Aviation, was involved in a floatplane collision.

## LEGAL CLAIMS

### COUNT ONE
### (HOLLAND DEFENDANTS—Maritime Negligence based on Failure to Warn)

71. The preceding paragraphs are incorporated as if set forth fully herein.

72. At all relevant times to this Complaint, the Holland Defendants, as common carriers, owed a duty to provide their cruise passengers, including Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll with reasonable care under the circumstances. Plaintiffs' failure to warn claim against the Holland Defendants is independent of any negligence attributable to Defendants Southeast Aviation or Defendant Lanzendorfer. Therefore, the Holland Defendants cannot disclaim or limit by contract their liability for breaching their independent duty to warn passengers of known dangers." *See* 46 U.S.C.A. § 30509.

73. At all relevant times to this Complaint, as owners, operators, and/or charterers of cruise vessels, the Holland Defendants' duty of reasonable care includes the duty to warn their cruise passengers, including Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll of unreasonable dangers known to the Holland Defendants in places where its passengers, including Plaintiffs' decedents, were invited, or would reasonably be expected to visit, including on shore ports-of-calls like the Ketchikan port-of-call, where the subject cruise ship was docked when the subject plane crash occurred nearby.

74. The Ketchikan port-of-call was an integral and ongoing part of subject Holland cruise.  Ketchikan was one of seven Alaska destinations during the subject cruise, and the Holland

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 23

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

Defendants did (and continues) to heavily advertise and promote Ketchikan as an essential part of the Holland's Alaska cruises, like the subject cruise.

75.    It was foreseeable to the Holland Defendants that their passengers, including Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, would participate in the subject floatplane excursion while the cruise ship was docked in Ketchikan.  The Holland Defendant knew that these passengers expected to return to the ship after the Ketchikan port-of-call and subject floatplane excursions for the remainder of the cruise.

76.    On August 5, 2021, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll foreseeably participated in the subject floatplane excursion that was operated by Defendant Southeast while the cruise was stopped at its scheduled Ketchikan port-of-call.  The Holland Defendants reasonably expected that their cruise passengers would participate in the subject floatplane excursion because the Holland Defendants promoted, marketed, advertised, and/or sold a substantially similar sightseeing floatplane excursion in Ketchikan/Misty Fjords locale.  On its website, the Holland Defendants listed the "Misty Fjords National Monument" as the "top" "thing to do in Ketchikan, Alaska," adding it is "best explored by boat or seaplane."

77.    Moreover, the Holland Defendants had a business relationship with Defendant Southeast Aviation, as evidenced by the fact that the Holland Defendants are named as additional insureds on Defendant Southeast Aviation's insurance policy.  The Holland Defendants required that Defendant Southeast to list Holland as additional insureds because (1) the Holland Defendants anticipated that their passengers would participate in Defendant Southeast's Misty Fjord's floatplane excursions, like the one involved in the subject crash on August 5, 2021; and (2) the Holland Defendants were aware of the dangers associated with these floatplane excursions.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

78.     Through the 2015 crash discussed above in Paragraphs 4 and 68, and other crashes that have occurred in connection with cruise floatplane shore excursions to the Misty Fjord Monument, the Holland Defendants had actual knowledge, or at the very least constructive knowledge, of the dangers associated with floatplane shore excursions to the Misty Fjords Monument, like the fatal excursion on August 5, 2021 giving rise to this lawsuit.

79.     Specifically, the Holland Defendants had actual or constructive notice of the risk-creating conditions associated with Misty Fjord floatplane shore excursions:  The Holland Defendants knew, or should have known, that the Misty Fjords are characterized mountainous terrain with thick fog and clouds and rapidly changing weather conditions.  After the 2015 crash discussed above, and subsequent 2017 NTSB recommendation the cruise industry, the Holland Defendants knew, or should have known, that the scheduling pressures exerted by the cruise industry exacerbated the risks associated with the already dangerous flying conditions associated with the Misty Fjords.

80.     At all times relevant to this Complaint, the Holland Defendants owed a duty of care to warn the seven-day Alaskan Explorer cruise passengers, including Andrea McArthur,  Rachel McArthur, Jacquelyn Komplin and Janet Kroll, participating in sightseeing floatplane shore excursions at/or near the Ketchikan and Misty Fjords National Monument area about the unreasonably dangerous conditions caused by the mountainous terrain coupled with unsafe weather condition, including the low cloudy overcast and poor 2-3 mile visibility, and high aviation traffic.

81.     The fact that the Holland Defendants did not directly sell the subject floatplane excursion does not obviate their duty to warn passengers of the dangers associated with these

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 25

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

excursions.    The Holland Defendants knew their passengers would participate in seaplane excursions purportedly operated and sold by third parties and encouraged them to do so.

82.    On August 5, 2021, the Holland Defendants knew or in the exercise of reasonable care, should have known, that the conditions for passengers aboard sightseeing floatplane excursions created by congested aviation traffic, unsafe weather conditions—low overcast and poor visibility, mountainous terrain of the Ketchikan locale were unsafe and unreasonably dangerous conditions for the subject sightseeing floatplane excursion to take place.

83.    Nevertheless, the Holland Defendants negligently failed to warn their cruise passengers, including Plaintiffs' decedents, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll of this heightened risk of danger caused by the terrain, unsafe weather conditions, and high aviation traffic.  Instead, the Holland Defendants continued to promote and advertise floatplane shore excursions to the Misty Fjords, thereby creating an unreasonable risk of harm to their Alaska cruise passengers.

84.    The Holland Defendants also negligently failed to heed the NTSB's 2017 recommendation to the cruise industry to mitigate the dangers associated with Misty Fjords seaplane excursions.  The Holland Defendants response to that recommendation was to protect themselves by mandating that operators like Defendant Southeast Aviation include them as insureds on their policies. Thus, rather than taking steps to mitigate risks to their passengers, they merely mitigated their own risks.

85.    As a direct and proximate result of the breach by the Holland Defendants of their duty to warn, Plaintiffs' decedents, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, participated in the subject sightseeing floatplane excursion during unreasonably

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

dangerous and hazardous conditions, and as a result suffered catastrophic injuries and physical, mental and emotional pain and suffering.

## COUNT TWO
**(ALL DEFENDANTS—Negligence based on Vicarious Liability)**

86.     The preceding paragraphs are incorporated as if set forth fully herein.

87.     At all times relevant to this Complaint, the Holland Defendants, and Defendant Southeast Aviation, LLC engaged in a joint venture, agency relationship, and/or partnership to provide excursions to passengers aboard the Holland Defendants' ships.

88.     The Misty Fjords Flightseeing by floatplane excursion was provided, arranged, controlled, coordinated, managed, operated, and supported by the Holland Defendants both directly and by and through their agent, ostensible agent, joint venturer, and partner Defendant and Defendant Southeast Aviation.

89.     Upon information and belief, the Holland Defendants and Defendant Southeast worked together to promote and provide the Misty Fjords Flightseeing excursion to the Holland Defendants' cruise passengers.  Upon information and belief, these entities had an express or implied contract to work together for their mutual profit, with a mutual sharing of the risks, benefits, and control of that endeavor.  As such, they were partners and joint venturers.

90.     Upon information and belief, the Holland America Defendants, together and in concert with Defendant Southeast, advertised, marketed, promoted, recommended, and endorsed the Misty Fjords Flightseeing excursion.  The Holland Defendants and Defendant Southeast, profit from the sale of shore excursions.

91.     Upon information and belief, at all times relevant to this Complaint, the Holland America Defendants, Defendant Shore Excursions, and Defendant Southeast entered into an

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 27

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

agreement where Southeast would operate and sell shore excursions that were promoted, marketed, directed to the Holland Defendants' cruise passengers on behalf of such joint venture.

92.     Upon information and belief, at all times relevant to this Complaint, Defendant Southeast named the Holland Defendants as Additional Insureds on its StarStone National Insurance Company liability policy in furtherance of such joint venture.

93.     As its part of the joint venture and/or agency relationship, the Holland Defendants made its cruise schedule and itinerary available to Defendant Southeast.

94.     Upon information and belief, at all times relevant to this Complaint, Defendant Southeast worked along with, and in concert with, as an agent of, and/or as a joint venturer with the Holland Defendants to promote, sell, provide, and profit from floatplane sightseeing tours for passengers of Holland Defendants cruise ships departing from home ports in the State of Washington, such as and including the MS *Nieuw Amsterdam*.

95.     Pleading in the alternative as permitted by Fed. R. Civ. P. 8, if the Holland Defendants did not directly profit from the sale of shore excursions operated by Defendant Southeast, Defendant Southeast was an agent or ostensible agent of the Holland Defendants.

96.     Upon information and belief, and without the full benefit of discovery, at all relevant times to this Complaint, there was a joint venture and/or agency relationship between the Holland Defendants and Defendant Southeast by virtue of the following:

(a)     The Holland Defendants and Defendant Southeast entered into an express or implied agreement that Defendant Southeast would operate and shore excursions that were promoted, marketed, directed to the Holland Defendants' cruise passengers on behalf of such joint venture;

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

(b)     Defendant Southeast would provide the Holland Defendants with a Certificate of Insurance under Defendant Southeast's StarStone National Insurance Company policy on behalf of such joint venture;

(c)     The Holland Defendants and Defendant Southeast shared the common purpose of advertising, marketing, offering selling, and/or providing sightseeing floatplane excursions to the cruise passengers aboard the MS *Nieuw Amsterdam* for profit;

(d)     The Holland Defendants and Defendant Southeast shared in the profits and losses derived from sightseeing floatplane excursions operated by Defendant Southeast; and

(e)     The Holland Defendants enticed passengers to purchase tickets on this cruise by specifically marketing sightseeing floatplane excursions of the Misty Fjords Monument as the "Number 1 Thing to Do in Ketchikan;"

(f)     The Holland Defendants governed the subject of how, when and where the agreement to provide sightseeing floatplane tours to their cruise passengers was to be performed.

97.     The Holland Defendants, by and through their agent, joint venturer, and partner Defendant Southeast, were negligent in the selection and retention of Rolf Lanzendorfer as pilot.

98.     On August 5, 2021, the Holland Defendants, by and through their agent, joint venturer, and/or partner Defendant Southeast, negligently put their own pecuniary interest in profits derived from the cruise passengers' participation in the subject sightseeing floatplane excursion above the physical safety of its passengers.

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 29

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

99.     On August 5, 2021, the Holland Defendants, by and through their agent, joint venturer, and/or partner Defendant Southeast and its employee/agent Rolf Lanzendorf, negligently flew the float-equipped de Havilland DC 2 Beaver aircraft, crashing it and fatally injuring all five Holland cruise passengers onboard.

100.    On August 5, 2021, the Holland Defendants, by and through their agent, joint venturer, and partner Defendant Southeast Aviation and its employee/agent Rolf Lanzendorfer were negligent in the following ways:

     (a)     Failing to exercise reasonable care under the circumstances;

     (b)     Failing to exercise reasonable care by checking and monitoring the Misty Fjords weather before departing on the Subject Floatplane Excursion;

     (c)     Failing to exercise reasonable care by not departing on the Subject Floatplane Excursion with two and one-half mile (2.5 mi) visibility and precipitation;

     (d)     Failing to exercise reasonable care to watch for and avoid continuing to fly in deteriorating conditions; and

     (e)     Failure to provide a safe excursion.

101.    As a direct and proximate result of the breach of the Defendants' negligence, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll suffered fatal injuries in the subject floatplane crash, as well as pre-death physical pain and suffering, and mental and emotional suffering, including pre-death terror and fear of impending death.

102.    All or some of the above acts and/or omissions by the Defendants and/or its agents, servants, and/or employees, caused and/or contributed to the catastrophic injuries and deaths of

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

Plaintiffs' decedents, Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll while participating in the subject floatplane excursion.

103.     Upon information and belief, at all times relevant to this Complaint, Defendant Southeast Aviation and the Holland Defendants were the agents, ostensible agents, servants, partners, and/or joint venturers of each of the other Defendants, and each was at all relevant times acting on behalf of and in concert with the others and within the course and scope of such agency, ostensible agency, service, employment, joint venture and/or partnership, such that the actions of each Defendant,  constituted the actions of each of the others, and each defendant is liable therefore.

### COUNT THREE
### (DEFENDANT SOUTHEAST—Negligence based on *Respondeat Superior* and/or Vicarious Liability)

104.     The preceding paragraphs are incorporated as if set forth fully herein.

105.     At all times relevant to this Complaint, Rolf W. Lanzendorfer, II, deceased, was an employee/agent of Defendant Southeast.

106.     At all times relevant to this Complaint, Rolf W. Lanzendorfer, was acting within the course and scope of his employment and/or agency with Defendant Southeast when he negligently failed to exercise reasonable care while operating the subject floatplane on which Plaintiffs' decedents were passengers.

107.     At all times pertinent to this Complaint, Rolf Lanzendorfer was acting in furtherance of the interest of Defendant Southeast.

108.     On August 5, 2021, Rolf Lanzendorfer, as pilot of the float-equipped 1965 de Havilland DC 2 Beaver for the Subject Floatplane Excursion, and as employee/agent of Defendant Southeast, owed the passengers, including Plaintiffs' decedents Andrea McArthur,

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 31

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

Rachel McArthur, Jacquelyn Komplin and Janet Kroll, a duty to exercise reasonable care for their safety in his operation of the Subject Floatplane.

109.    At all times relevant to this Complaint, Rolf Lanzendorfer, as pilot of the subject floatplane excursion had a duty to check and monitor the weather conditions in the Misty Fjords area before proceeding with the subject floatplane excursion.

110.    At such time, it was reasonably foreseeable to Mr. Lanzendorfer that if he operated the subject floatplane negligently and/or recklessly, such negligence and/or recklessness could result in a fatal floatplane accident and cause fatalities to Plaintiffs' decedents.

111.    On August 5, 2021, Mr. Lanzendorfer breached his duties of care to Plaintiffs' decedents by negligently, carelessly, and recklessly operating the Subject Floatplane in deteriorating weather conditions.  Said negligent acts or omissions included, but are not limited to, the following:

(a)    Failing to check or inadequately checking weather conditions at the destination site before departing;

(b)    Departing for the Subject Floatplane Excursion in visibility conditions less than two and one-half miles (2.5 mi) and precipitation;

(c)    Failing to cancel the Subject Floatplane Excursion due to deteriorating weather conditions; and

(d)     Failing to safely transport Plaintiffs' decedents.

112.    The above-described act and/or omissions of Mr. Lanzendorfer are imputed by law to Defendant Southeast Aviation.

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

113.   As a direct and proximate result of Mr. Lanzendorfer's negligence, for which Defendant Southeast is vicariously liable, Plaintiffs' decedents suffered fatal injuries in the subject August 5, 2021 floatplane crash.

114.   Defendant Southeast is liable for Mr. Lanzendorfer's negligence along with the negligence of the Holland Defendants, for causing and/or contributing to Plaintiffs' decedents fatal injuries and wrongful death.

## COUNT FOUR
### (DEFENDANT LANZENDORFER, by and through the Personal Representative of the Estate of Rolf W. Lanzendorfer, II—Negligence)

115.   The preceding paragraphs are incorporated as if set forth fully herein.

116.   At all times relevant to this Complaint, Rolf W. Lanzendorfer, II, deceased, as pilot of the float-equipped 1965 de Havilland DC 2 Beaver for the Subject Floatplane Excursion, and as employee/agent of Defendant Southeast, owed the passengers, including Plaintiffs' decedents Andrea McArthur, Rachel McArthur, Jacquelyn Komplin and Janet Kroll, a duty to exercise reasonable care for their safety in his operation of the Subject Floatplane.

117.   At all times relevant to this Complaint, Rolf Lanzendorfer, as pilot of the subject floatplane excursion had a duty to check and monitor the weather conditions in the Misty Fjords area before proceeding with the subject floatplane excursion.

118.   At such time, it was reasonably foreseeable to Mr. Lanzendorfer that if he operated the subject floatplane negligently and/or recklessly, such negligence and/or recklessness could result in a fatal floatplane accident and cause fatalities to Plaintiffs' decedents.

119.   On August 5, 2021, Mr. Lanzendorfer breached his duties of care to Plaintiffs' decedents by negligently, carelessly, and recklessly operating the Subject Floatplane in

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

deteriorating weather conditions.  Said negligent acts or omissions included, but are not limited to, the following:

    (a)  Failing to check or inadequately checking weather conditions at the destination site before departing;

    (b)  Departing for the Subject Floatplane Excursion in visibility conditions less than two and one-half miles (2.5 mi) and precipitation;

    (c)  Failing to cancel the Subject Floatplane Excursion due to deteriorating weather conditions; and

    (d)  Failing to safely transport Plaintiffs' decedents.

120.    The above-described act and/or omissions of Mr. Lanzendorfer are imputed by law to Defendant Southeast Aviation.

121.    As a direct and proximate result of Mr. Lanzendorfer's negligence, for which Defendant Southeast is vicariously liable, Plaintiffs' decedents suffered fatal injuries in the subject August 5, 2021 floatplane crash.

122.    Mr. Lanzendorfer is liable, along with Defendant Southeast and the Holland Defendants, for causing and/or contributing to Plaintiffs' decedents fatal injuries and wrongful death.

## DAMAGES SOUGHT BY PLAINTIFFS

Plaintiffs seek to recover from Defendants for every element and category of damages permitted under law which they are entitled to, including but not limited to:

    (a)    In his capacity as Surviving Spouse of Andrea McArthur, Plaintiff Dana McArthur seeks recovery for damages from all Defendants for the wrongful death of Andrea

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 34

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

McArthur, including the full value of her life, economic and non-economic, tangible and intangible, in an amount to be determined based upon the evidence presented at trial and all damages pursuant to the applicable wrongful death and survival statutes in Washington including, but not limited to, RCW 4.20.010, RCW 4.20.020, RCW 4.20.046, and RCW 4.20.060;

(b)    In his capacity as Surviving Parent of Rachel McArthur, Plaintiff Dana McArthur seeks recovery for damages from all Defendants for the wrongful death of Rachel McArthur, including the full value of her life, economic and non-economic, tangible and intangible, in an amount to be determined by the enlightened conscience of the jury based upon the evidence presented at trial and all damages pursuant to the applicable wrongful death and survival statutes in Washington including, but not limited to, RCW 4.20.010, RCW 4.20.020, RCW 4.20.046, and RCW 4.20.060;

(c)    In his capacity as Personal Representative of the Estates of Andrea McArthur and Rachel McArthur, Plaintiff Dana McArthur seeks recovery for damages from all Defendants for Andrea McArthur's and Rachel McArthur's physical and mental pain and suffering, including the shock, fright, and terror Andrea and Rachel endured during the subject incident and up until when they died, in an amount to be determined by the jury based upon the evidence to be presented at trial;

(d)    In his capacity as Personal Representative for the Estates of Andrea McArthur and Rachel McArthur, Plaintiff Dana McArthur also seeks recovery for damages from all Defendants for any and all of Andrea McArthur's and Rachel McArthur's

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

funeral expenses incurred by their respective Estates, in an amount reflecting the

reasonable value of those expenses based upon the evidence to be presented at trial;

(e)     In their capacity as surviving adult children of Jaquelyn Komplin, Plaintiffs Erin

and Collin Komplin seek recovery for damages from all Defendants for the

wrongful death of Jacquelyn Komplin, including the full value of her life, economic

and non-economic, tangible and intangible, in an amount to be determined by the

based upon the evidence presented at trial and all damages pursuant to the

applicable wrongful death and survival statutes in Washington including, but not

limited to, RCW 4.20.010, RCW 4.20.020, RCW 4.20.046, and RCW 4.20.060;

(f)     In his capacity as Personal Representatives of the Estate of Jacquelyn Komplin,

Plaintiff Collin Komplin seeks recovery for damages from all Defendants for

Jacquelyn Komplin's physical and mental pain and suffering, including the shock,

fright, and terror she endured during the subject incident and up until she died, in

an amount to be determined by the jury based upon the evidence to be presented at

trial;

(g)     In his capacity as Personal Representatives for the Estate of Jacquelyn Komplin,

Plaintiff Collin Komplin also seeks recovery for damages from all Defendants for

any and all of Jacquelyn Komplin's funeral expenses incurred by the Estate, in an

amount reflecting the reasonable value of those expenses based upon the evidence

to be presented at trial;

(h)     In their capacity as the surviving adult children of Janet Kroll, Plaintiffs Gerald

Fuller and Wendy Cavalli seek recovery for damages from all Defendants for the

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 36

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

wrongful death of Janet Kroll, including the full value of her life, economic and non-economic, tangible and intangible, in an amount to be determined by the based upon the evidence presented at trial and all damages pursuant to the applicable wrongful death and survival statutes in Washington including, but not limited to, RCW 4.20.010, RCW 4.20.020, RCW 4.20.046, and RCW 4.20.060;

(i)      In his capacity as Personal Representatives of the Estate of Janet Kroll, Plaintiff Gerald Fuller seeks recovery for damages from all Defendants for Janet Kroll's physical and mental pain and suffering, including the shock, fright, and terror she endured during the subject incident and up until she died, in an amount to be determined by the jury based upon the evidence to be presented at trial; and

(j)      In his capacity as Personal Representatives for the Estate of Janet Kroll, Plaintiff Gerald Fuller also seeks recovery for damages from all Defendants for any and all of Janet Kroll's funeral expenses incurred by the Estate, in an amount reflecting the reasonable value of those expenses based upon the evidence to be presented at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray:

(a)      That summons issue requiring the presently-named Defendants to appear and Answer this Complaint as provided by law;

(b)      That Plaintiffs have a trial by jury;

(c)      That Plaintiffs recover from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are sufficient to compensate fully

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 37

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

and fairly for all losses proximately caused by the tortious acts and omissions of Defendants to be determined based upon the evidence adduced at trial; and

(d)    For such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted, this 4th day of August, 2022.

By: */s/ James S. Rogers*
JAMES S. ROGERS
Washington Bar No. 5335
By: */s/ Heather M. Cover*
HEATHER M. COVER
Washington Bar No. 52146
**The Law Offices of James S. Rogers**
1500 4th Ave., Ste. 500
Seattle, Washington 98101
Telephone:     (206) 621-8525
Facsimile:     (206) 223-8224
E-mail: jsr@jsrogerslaw.com
E-mail: heather@jsrogerslaw.com

*Motion for Pro Hac Vice to Be Filed For:*

RANSE M. PARTIN
Georgia Bar No. 556260
WILL K. OWENS
Georgia Bar No. 777434
L'ZANDRA V. JONES
Georgia Bar No. 305294

**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
Facsimile:     (404) 467-1166
ranse@conleygriggs.com
will@conleygriggs.com
zan@conleygriggs.com

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 38

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ATTORNEYS FOR PLAINTIFFS DANA MCARTHUR, ERIN KOMPLIN, AND COLLIN KOMPLIN**

DAVID C. WISE
Illinois Bar No. 6217063
ROBERT J. BINGLE
Illinois Bar No. 6182053


**WISE MORRISSEY, LLC**
161 North Clark Street
Suite 3250
Chicago, Illinois 60601
Telephone:     (833) 239-7371
Facsimile:      (312) 580-2041
dcw@wisemorrissey.com
rjb@wisemorrissey.com

**ATTORNEYS FOR PLAINTIFF GERALD FULLER AND WENDY CAVALLI**

FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL(2:22-CV-01071-TLF) - Page 39

*The Law Offices of James S. Rogers*
1500 4th Avenue
Suite 500
Seattle, WA 98101
(206) 621-8525